

# THE ATTORNEY GENERAL
## OF TEXAS

PRICE DANIEL
ATTORNEY GENERAL

AUSTIN, TEXAS

January 24, 1950

Hon. Henry B. Hardt, President
Board of Examiners in the
Basic Sciences
Austin, Texas

Opinion No. V-988.

Re: Several questions re-
garding apparent con-
flicts between the
Basic Science Law and
statutes respecting
other licensing agen-
cies.

Dear Sir:

        Your request for an opinion relating to possi-
ble conflicts in House Bills 103, 915 and 721, Acts of
the 51st Legislature, 1949, contains six questions as
follows:

        "1.  There appears to be a conflict be-
    tween Section 16 of H. B. 915 and Section 10
    of H. B. 721, in that the dates for the ex-
    emption of practicing chiropractors are not
    the same.  Do these two dates refer to exact-
    ly the same thing?  Who among the chiroprac-
    tors must obtain a Basic Science Certificate
    to become eligible for a license to practice?
    The interpretation of the Basic Science Board
    has been certain chiropractors practicing in
    Texas before April 28, 1948, are exempt from
    the Basic Science Examinations; that those
    who began practice between April 28, 1948,
    and April 18, 1949, are required to obtain a
    Basic Science Certificate, but in accord with
    H. B. 721 are exempt from the Chiropractic
    Board Examination; that those who began prac-
    tice since April 18, 1949, are subject to
    both the Basic Science Law and the Chiroprac-
    tic Law.

        "2.  There appears to be another conflict
    between Section 16 of H. B. 915 and the last
    paragraph of Section 10, H. B. 721.  Certain
    students are exempted from examinations by

H. B. 721, while H. B. 915 does not exempt
the same students. We need to know what law
governs.

"3. If your ruling in the above ques-
tion approves the exemption of certain stu-
dents in chiropractic schools, then does the
Basic Science Board still have the authority
to require similar students in other healing
arts schools to obtain certificates?

"4. There appears to be a conflict
between H.B. 103 and the Medical Practice
Act of 1939. The act of 1939 requires of a
student until 1942, I believe, only a high
school education before going to medical
school. Section 25 of H.B. 103 states that
previous licensing laws are not repealed,
and yet no provision is made for issuing
Basic Science Certificates to doctors who
obtained licenses before 1942 without col-
lege courses. To cite a specific case, Dr.
Marvin T. McDonald was graduated from Kan-
sas City College of Osteopathy and Surgery
in 1937, received D. O. licenses by examina-
tions in Missouri and by Reciprocity in Kan-
sas and Oklahoma. He applied to the Texas
Medical Board for examination in February
1949, took the examination in June, 1949, and
was then informed by the Medical Board that
he must obtain a Basic Science Certificate.
He then applied to the Basic Science Board
and was not permitted to take the examina-
tion because he did not have the required
college credits. It is the thought of the
Basic Science Board that if the law permits,
all persons who had received licenses prior
to 1942 should be permitted to obtain a
Basic Science Certificate regardless of the
amount of college credit.

"5. If your office rules that the above
described doctors should be permitted to ob-
tain certificates, then are they exempted from
the examinations by the 1939 Medical Practice
Act, or must they take the examinations to get
certificates? The Board believes that if they
are not required to have credit in the courses
it would be better not to require that they
take the examinations.

"6. Your office has rendered the opinion (V-895), that H. B. 103 does contain a valid appropriation for a period of two years beginning April 28, 1949, and ending April 27, 1951. To have continuous operational funds, will it be necessary to obtain a supplementary appropriation for the latter part of the two year period covered in the normal biennium of September 1, 1949--August 31, 1951? Your counsel on this matter will be greatly appreciated."

Section 10 of House Bill 721, Acts 51st Leg., R.S. 1949, ch.94, p.160, reads in part as follows:

"Provided, however, that those who are regularly engaged in the practice of chiropractic in this State on April 18, 1949, and who have completed a resident course and hold diplomas from schools recognized by the Board as being regularly organized and conducted as chiropractic schools at the time of the issuance of such diplomas, shall be licensed under this Act, provided they apply therefor within six (6) months after the effective date of this Act, and provided further that they shall meet the provisions of this Act with reference to citizenship, age and good moral character; . . ."

Section 16 of House Bill 103, Acts 51st Leg., R.S. 1949, ch.95, p.170, reads in part as follows:

". . . nor shall the Basic Science Law apply to any Chiropractor who is a graduate of a school which was regularly organized and conducted as a chiropractic school in the United States at the time of such graduation and who has practiced Chiropractic one (1) year immediately preceding the effective date of this Act and who has resided in Texas for two (2) years immediately preceding the effective date of this Act and who has never had a license to practice any branch of the healing art cancelled by an American or Canadian State, Province or Territory, provided, however, that licenses voided by virtue of the decision in Ex Parte Halsted, 182 S.W. (2nd) 479, shall not be construed as licenses cancelled as provided by this Section."

House Bill 915, Acts 51st Leg., R.S. 1949, ch. 287, p. 522, is an Act amending Sections 8, 16, and 18 of House Bill 103 and adding a new section, numbered 23a. It only affected Section 16 insofar as it relates to a member of a religious faith ministering the last rites of his faith and ministering or offering to minister to the sick or suffering by prayer and did not in any manner affect the problem under consideration.

The effective date of House Bill 721 was April 27, 1949. The effective date of House Bill 103 was April 28, 1949. The effective date of House Bill 915 was October 5, 1949.

Upon the effective date of House Bill 721 all chiropractors regularly engaged in the practice of chiropractic in this State on April 18, 1949, and who had completed a resident course and held diplomas from schools recognized by the Board as proper chiropractic schools at the time of the issuance of such diplomas, were entitled to be licensed as chiropractors under the exemption contained in Section 10 of H.B. 721. Likewise under the provisions of Section 16 of H.B. 103 all chiropractors who were graduates of regularly organized chiropractic schools, with one year's practice immediately preceding April 28, 1949, the effective date of the Act, and who had resided in this State for two years immediately prior to such date, are exempt from the provisions of the Act requiring a certificate of proficiency in the basic sciences. It is apparent, therefore, that all chiropractors not coming within the exceptions must be examined in the basic sciences and for a chiropractic license. This is true because the intention of the Legislature is clear that the statute should apply in all cases not excepted. Accord, Federal Crude Oil Co. v. Yount-Lee Oil Co., 122 Tex. 21, 52 S.W.2d 56 (1932).

From the above it follows that a chiropractor beginning practice after April 18, 1949, must obtain a certificate of proficiency in the basic sciences as well as a license to practice chiropractic pursuant to H.B. 103 and H.B. 721. A chiropractor beginning practice after April 28, 1948, and prior to April 18, 1949, must obtain a certificate of proficiency in the basic sciences, inasmuch as he would not have a year's practice within the meaning of Section 16, H.B. 103, as amended. The provisions of H.B. 721 would exempt such chiropractor from an examination for a license to practice chiropractic.

In your second question you state there appears to be a conflict between Section 16 of House Bill 915 and the last paragraph of Section 10 of House Bill 721. The last paragraph of Section 10, H.B. 721 is as follows:

"Provided that those who have begun the study of chiropractic prior to the effective date of this Act in institutions regularly organized and conducted as chiropractic schools shall be licensed under this Act, provided they complete a standard chiropractic resident course of one hundred and twenty (120) semester hours in such school or schools and receive diplomas therefrom; and provided further that they shall meet the provisions of this Act with reference to citizenship, age, and good moral character."

Section 16 of House Bill 103 as amended by H.B. 915 relating to exemptions does not contain any exemption as to students studying chiropractic in institutions regularly organized and conducted as chiropractic schools. The only provision exempting students of this category from obtaining a certificate of proficiency in the Basic Sciences is found in Section 23a, H.B. 915, which relates to those graduates of schools of the healing arts who have enrolled under the G. I. Bill of Rights for at least one year prior to the date this Act becomes a law. This being true, it is our opinion that those persons engaged in the study of chiropractic prior to the effective date of House Bill 721 would be exempt from examination for chiropractic license, but would not be exempted from the provisions of House Bill 103, as amended by H.B. 915, which requires all persons not exempted to obtain a certificate of proficiency in the Basic Sciences. We therefore conclude that all students in chiropractic schools on the effective date of H.B. 721 except those exempted under Section 23a of H.B. 915, must obtain certificates of proficiency in the Basic Sciences in compliance with H.B. 103 before practicing chiropractic.

Passing to your third question it is our opinion that all students not coming under Section 23a of House Bill 915 should be required to obtain certificates of proficiency in the Basic Sciences before receiving a license or taking an examination for a license to practice the healing arts.

The answer to your fourth question requires a

determination of the effect of H.B. 103 (Basic Science
Law) upon the Medical Practice Act of 1939 (Arts. 4500
et seq., V.C.S.).

Section 7 of House Bill 103 is as follows:

"Sec. 7. No certificate shall be issued
by the Board unless the person applying for it
submits evidence, satisfactory to the Board,
(1) that he is a citizen of the United States;
(2) that he is not less than nineteen (19)
years of age; (3) that he is a person of good
moral character; (4) that he was graduated by
a high school accredited by the State Commit-
tee on Classified and Accredited Schools, or a
school of equal grade, or that he possesses
educational qualifications equivalent to those
required for graduation by such an accredited
high school; (5) he must have completed sixty
(60) semester hours of college courses which
would be acceptable at the time of completing
same at The University of Texas on a Bachelor
of Arts Degree or a Bachelor of Science Degree;
and (6) that he has a comprehensive knowledge
of the basic sciences as shown by his passing
the examination given by the Board as by this
Act required. This shall not be construed to
prevent the issue of certificates under the
provisions of Section 8 of this Act."

Section 8 of House Bill 103, supra, as amend-
ed by H.B. 915, supra, is as follows:

"'Sec. 8. The Board shall waive the
examination required by Section 7, when
proof satisfactory to the Board is submit-
ted, showing (1) that the applicant has pass-
ed in another State, Territory, or District
of Columbia, an examination in the basic
sciences before a board of examiners; (2)
that the requirements of that State, Terri-
tory, or District of Columbia are not less
than those required by this Act as a condi-
tion precedent to the issue of a certificate;
(3) that the board of examiners in that State,
Territory, or District of Columbia grants
like exemption from examination in the basic
sciences to persons holding certificates from
the State Board of Examiners in the Basic

Sciences in Texas; (4) that the applicant
show satisfactory proof that he is a citi-
zen of the United States; and (5) that the
applicant is a person of good moral charac-
ter and the holder   of an uncancelled basic
science certificate from another State, Ter-
ritory, or the District of Columbia.'"

Articles 4500 and 4501, V.C.S., which are a
part of the Medical Practice Act of 1939, provide in
part as follows:

"Art. 4500.

"The State Board of Medical Examiners
may, in its discretion, upon payment by an
applicant of a fee of Fifty Dollars ($50),
grant license to practice medicine to any
reputable physician who is a citizen of the
United States, and a graduate of a reputable
medical college, or who has qualified on ex-
amination for a certificate of medical qual-
ification for a commission in the Medical
Corps of the United States Army or Navy, and
to licentiates of other States or Territories
having requirements for medical registration
and practice equal to those established by
the laws of this State. . . ."

"Art. 4501.

"All applicants for license to practice
medicine in this State not otherwise licens-
ed under the provisions of law must success-
fully pass an examination by the Board of
Medical Examiners.  The Board is authorized
to adopt and enforce rules of procedure not
inconsistent with the statutory requirements.
Applicants to be eligible for examination
must . . . have completed sixty (60) semester
hours of college course, other than in a med-
ical school, which courses would be acceptable,
at time of completing same, to the University
of Texas for credit on a Bachelor of Arts De-
gree or a Bachelor of Science Degree, . . ."

From the above it is apparent that Section 7
of House Bill 103 requires as a prerequisite for taking
the Basic Science examination the completion of sixty

(60) semester hours of college courses which would be acceptable at the time of completing same at the University of Texas on a Bachelor of Arts or Science degree. It is also expressly provided in Section 25 of House Bill 103 that it is not to be construed as repealing any statutory provision in force at the time of its passage relative to the requirements governing the issuance of licenses to practice the healing arts. Therefore the requirement of House Bill 103 with reference to a certificate of proficiency in the basic sciences is an additional requirement to those imposed by the Medical Practice Act of 1939, and the two Acts are not in conflict. This exact point was raised and decided in Stroud v. Crow, 136 S.W.2d 1025 (Ark.Sup. 1940, app. dism'd 311 U.S. 607, 1940) wherein the Court said:

"The Basic Sciences Act of 1929 does not repeal, amend or modify any preexisting law relating to examination of applicants to practice the healing art, but is an additional requirement, as prerequisite to be complied with before taking such examinations. These laws remain in full force and effect, but with the superimposed requirements of said Act." (Emphasis added.)

As to whether an applicant for an examination in the basic sciences is entitled to an exemption, either by way of reciprocity or otherwise, is a matter for the Board to decide, and such determination is its responsibility.

You are therefore advised in answer to your fourth question that House Bill 103 imposes an additional requirement to those imposed by the Medical Practice Act of 1939, and such additional requirement must be complied with before taking an examination to practice the healing arts. All applicants not meeting the requirements of House Bill 103 (Basic Science Law), and not otherwise exempt therefrom, are ineligible to take the examination for license to practice the healing arts.

Our answer to your fourth question makes it unnecessary to answer your fifth question.

Attorney General Opinion No. V-895, referred to in your sixth question, states that House Bill 103 does contain a valid appropriation for a period of two years beginning April 28, 1949, and ending April 27,

1951. Therefore, to have continuous operational funds
it will be necessary for the Board of Basic Science Ex-
aminers to obtain a supplementary appropriation for the
latter part of the two-year normal biennium of Septem-
ber 1, 1949, to August 31, 1951, that is, from April 27,
1951 to August 31, 1951.

## SUMMARY

A chiropractor beginning the practice
of chiropractic after April 18, 1949, must ob-
tain a certificate of proficiency in the Basic
Sciences. A chiropractor beginning practice
after April 28, 1948, and prior to April 18,
1949, must obtain a certificate of proficien-
cy in the Basic Sciences, but the provisions
of H.B. 721, Acts 51st Leg., R.S. 1949, ch.
94, p.160, exempt such a chiropractor from
an examination to practice chiropractic. The
provisions of H.B. 103, Acts 51st Leg., R.S.
1949, ch.95, p.170, (Basic Science Law) do
not apply to a chiropractor who is a gradu-
ate of a regularly organized chiropractic
school who has practiced chiropractic for one
year immediately preceding April 28, 1949,
and who has resided in Texas for two years
immediately preceding such date.

All students engaged in the study of
chiropractic in institutions regularly or-
ganized and conducted as chiropractic schools
on April 27, 1949, the effective date of H.B.
721, Acts 51st Leg., R.S. 1949, ch.94, p.160,
are exempt from an examination for license
to practice chiropractic but must obtain a
certificate of proficiency in the Basic
Sciences except as exempted under Section
23a of House Bill 915, Acts 51st Leg., R.S.
1949, ch.287, p.522.

The Basic Science Law (H.B. 103) does
not repeal the Medical Practice Act of 1939
but imposes an additional requirement to be
complied with before taking an examination
to practice the healing arts. Stroud v.
Crow, 136 S.W.2d 1025 (Ark. Sup. 1940).

For continuous operations of the Board

of Examiners in the Basic Sciences after
April 27, 1951, a supplementary appropria-
tion will be necessary,

APPROVED:

J. C. Davis, Jr.
County Affairs Division

Charles D. Mathews
Executive Assistant

BW:bh:mw

Yours very truly,

PRICE DANIEL
Attorney General

By
Burnell Waldrep
Assistant